1311, American Freedom Defense Initiative, et al. v. Suburban Mobility Authority for Regional Transportation, SMART, et al. Arguments not to exceed 15 minutes per side. Mr. Mews for the appellants. Good morning, may it please the court. I'm Robert Mews and it's my privilege to represent the plaintiff's appellants in this important First Amendment case. I'd like to reserve three minutes of my time for rebuttal. SMART's ban on plaintiffs leaving Islam ad is unreasonable and viewpoint-based in violation of the First Amendment regardless of the nature of the form. Indeed, the two bases for rejecting plaintiff's ad violate recent U.S. Supreme Court precedent. SMART's ban on scornful ads is an unlawful viewpoint-based restriction under Mattel v. Tam and SMART's ban on political ads is unlawful under Minnesota Voters Alliance v. Mansky. Now these two cases compel this court to reverse the district court and uphold the plaintiff's First Amendment rights. I want to turn briefly to the viewpoint discrimination issue first. SMART bans ads that, and this is the language of their restriction, likely to hold up to scorn or ridicule any person or group of persons. This is a viewpoint-based restriction under Mattel v. Tam, a case which made it clear that restrictions prohibiting demeaning or disparaging, or in this case, scornful speech, are viewpoint restrictions. Those are unlawful regardless of the nature of the form, whether it be a designated form, a public form, or a non-public form. Mattel v. Tam, the court made clear that giving offense is viewpoint. In this case, the restriction on its face is a viewpoint-based restriction which is unlawful and can't be used as a basis. So what is the, is there any limiting principle to your argument? The most kind of compelling common sense instinct is SMART's trying to run a business, and business likes to avoid controversy because controversy upsets its consumers, and then you don't want to lose consumers. So would your position lead to SMART having to put up things like KKK advertisements and things of that sort? Or is there some type of limiting principle that you could provide us that that type of kind of advertisement would not be covered by the rule you seek? Right. And certainly, you know, the hard cases oftentimes make bad law, as we have found to say. But I mean, obviously in this case, and we have, you know, we cited the American Freedom Defense Initiative v. King County with the Ninth Circuit just recently in a SMART's advertising case, non-public form. My clients had an ad that they determined was demeaning and disparaging to Muslims. In fact, that case went up twice, similar to this one, to the Ninth Circuit, where we lost the first time around. Then after Mattel v. Tam, the court felt compelled that even though it's a commercial enterprise, a non-public form, this court previously held that SMART's form is a non-public form, that that ad was viewpoint-based and its restriction was unconstitutional under Mattel v. Tam. Now there are, in a non-public form, they certainly get more leeway. But in a non-public form, the courts have said that the restrictions must be reasonable and viewpoint-based. If it's a viewpoint-based restriction, it's unconstitutional. This is the government, right? And what is their option? They can close the form altogether. They don't have to permit advertising. It's somewhat unfair in the sense that, you know, this is a revenue stream for them. They're not doing this to promote speech. I mean, the basic idea for this is, look, it helps us run our buses. It seems like it puts them at a competitive disadvantage as compared to a private party who, as in an earlier decision, a fast food joint is not going to put up. They're at a competitive disadvantage because we have something called the First Amendment, and they are a government agency. Well, I mean, the First Amendment at its core is designed to, the verb abridges in the First Amendment, and this could be seen as a refusal to give a subsidy. It's their buses, and you want to put your signs on their buses. And they're paying the price. You can put your signs anywhere you want to put your signs on your own property, but this is their property. And one of the problems, for example, you look at the ads that they have accepted. To say that they want to be immune from all controversy whatsoever, I think, is absurd when you look at this record. They have the atheist ad, which this court previously said, well, it was just an aberrant one-off. But they continue to this day defend the display of that atheist ad, which bus drivers refuse to drive the buses with that ad on it. Look at that status sexy campaign. And those ads, those advertisements are inside the buses as well. I mean, that's a lewd campaign at best. They have ads where they promote the use of contraception. I'm a Catholic. I find that very offensive. So they've gone down this road, and this almost goes more to the form question, whether it's a non-public form or whether they've opened their form up to such controversial speech that it's, in fact, a public form, and even content-based restrictions are unlawful. But we don't even have to go there. Even assuming that it's a non-public form under Mattel versus Tam, that restriction is unlawful as a matter of law. They're a government agency. They have to abide by the First Amendment. Mansky did, at the end of the opinion, say that, yeah, we found Minnesota's application problematic, but we're only deciding this case, and there could be rules under which a political ban is objectively applied. I know you disagree with their view that Mansky is still violated, but is there any view of regulation of political speech that you think would be acceptable after Mansky with that disclaimer in place? And I wonder if you could point on that a little bit. Absolutely, Your Honor. In bear in mind, Mansky struck down the restriction on its face. So it wasn't even just an as-implied, it was on its face because it wasn't guided by objective standards, and they looked at what the limiting restrictions that they put on it, and quite frankly, the limiting restrictions that they put on it are far narrower than SMART does. In Mansky, the government put a limiting restriction of only words and symbols that an objectively reasonable observer would perceive as conveying a message about the electoral choices at issue in the polling place. SMART is even broader and less objective. Theirs is any advocacy of a position of any politicized issue, and then they go on to say, politicize if society is fractured on an issue and factions of society have taken up positions on it that are not in agreement. Getting right to your point... I agree with that, but do you have a view on whether something would be objective? I'm getting to that, Your Honor. I'm sorry for the circuitous route that it appears I'm taking. The court cited three cases in Mansky where there potentially could be, where political could have an objective standard that could be applied. They cited the Lehman case, and in the Lehman case, it was a politician who put up a political campaign ad. There was Greer versus Spock, which was a politician who wanted to engage in political campaigning on a military base. And then there was the combined federal campaign and the Cornelius case. And what's interesting in the Cornelius case, because that was more about who was going to have access to this program. And so they prohibited it from political advocacy groups and groups that were legal defense groups. But what more of a limiting construction on that is who could be, who have access to the CFC. And they said essentially your traditional nonprofit charitable organizations that provide goods and services by way of charity to individuals. So those are the three cases that they relied on. And I think if you had, if it was, you know, if they wanted to ban political campaigns, ballot questions, politicians, political campaign ads, I think under those cases and even under Mansky, the court said, you know, that's likely an objective standard for political. But when you have this sliding amorphous, you know, sort of whether or not it's contentious or how contentious it is, that's unlawful. And quite frankly, even under this court's decision in United Food, which the original panel distinguished, but I think after Mansky it's not distinguishable. There they said controversial public issues was what the standard was. And this court said that's not objective enough. And it was unlawful. And SMART, the 2012, when we appealed the, they appealed the preliminary injunction, the court said SMART's prohibition of political advertisements appears reasonable and constitutional on his face. That holding no longer stands after Mansky. I mean, Mansky compels this court to reverse it. So is the Ninth Circuit your best case, your best post-Mansky case, applying Mansky in the context of bus signs? Well, the Ninth Circuit case, just to be clear, was Mattel versus Tam. That was the viewpoint discrimination. I was talking about viewpoint discrimination. So how has Mansky applied? How have other courts applied Mansky? Well, the only court that I'm aware of right now, which these are all cases that I've actually argued, was a case that's presently before, that went before the D.C. Circuit American Freedom of Defense Initiative versus the Washington Metropolitan Area Transit Authority. And there, the lower court upheld the ban on political, on the political speech, and in fact cited to this court's 2012 case, the D.C. Circuit reversed and remanded it down for the court to decide the issue in light of Mansky, making the point that it's likely no longer a constitutional holding. So that's the only one that I have where Mansky's applied there. But it's a... Can you think of a reason why? What is your view of whether the context of, because Mansky says you have to determine reasonableness in light of the purpose of the form and what the form is, is it your view that there should be less leeway when it comes to bus advertisements as compared to voting or more leeway and why? I think with the compatibility of the form goes to the question, and quite frankly, I mean, these are bus ads, and the form is compatible for a bus ad. In a polling place, it wouldn't be compatible, for example, to have a noise-making device that was saying, you know, vote for Trump, vote for Trump, or there might be things that would make it unreasonable in terms of what it is, the paraphernalia or whatever that they're bringing in. But we're talking about bus ads. So you talk about the purpose of the form when you're looking about the compatibility, I don't think there's any dispute that the ads, bus ads are compatible for the form because they run bus ads on their buses and they put them in the dioramas and other places. And going back to your very first question about, you know, if there's... Remember, the First Amendment, there is also, there are certain categories of speech that you can proscribe, right? Defamation, obscenity, incitement, although they're very, very narrowly construed, I think, for good reason. Same with fighting words. But even so, if there's something that caused, you know, so much harm to the bus advertising agency, even though it's a fundamental right, there are times when the government does satisfy strict scrutiny. But then, and the problem we have here is that this is operating as a prior restraint. So even for them to say that, well, you know, this might cause disruption in the buses, but it's operating as a prior restraint. The First Amendment requires at least to run it. If there's a compelling reason later, then maybe they can, they might have a basis for taking it off. But again, I go back to that atheist ad. In the atheist ad, you actually had bus drivers who refused to drive that bus. And they, and Smart's position is, well, that's not political. The question of whether God exists or doesn't exist, they had to say during the deposition, is not a politicized issue. I can't think of a more politicized issue. But it all goes to the point of giving them unfettered discretion, which the First Amendment doesn't allow. We're dealing with the First Amendment and government officials' restriction on freedom of speech. Thank you. Okay. Thank you. Good morning, Your Honors. Christian Hildebrandt on behalf of the Suburban Mobility Authority for Regional Transportation, John Hertel and Beth Gibbons. I think that Mr. Mews, at least for purposes of today, seems to assume that at least we're dealing with a non-public forum in this case. And I think that the fact that it's a non-public forum was very well supported by this court in 2012. I think it was very well, it's very well supported by the standards that Smart, or the advertising guidelines, rather, that Smart has presented in this case. They've indicated that this is a limited, this is a limited place. This is a place where we don't accept all speech. In order to minimize the chance of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience, Smart says, we limit the speech that can be put on our books. I mean, everybody agreed it was a limited forum and the court still said you needed objective guidance to distinguish what was considered political advocacy from not. And I mean, if anything, I would think that there, the Minnesota standard in that case, an objective observer would think that the advocacy is expressing a view about something that is on the ballot, seems more objective than what has been presented in this case. Well, I think the point of Mansky was less that it wasn't objective. I think the point of Mansky was that it was a haphazard standard. That is, it would change with every position that a candidate took. It would change with every... I think that's what happened with here, because it seems to me when I read the depositions that the definition you have provided of political in your guidelines has changed with the witness in some respects. The 30 v. 6 witness now says that political means an issue that has been politicized, and then politicized means something on which society disagrees. So I know in Thanksgiving, Saturdays after Thanksgiving, the biggest controversy in Ohio and Michigan is Ohio-Michigan football. So if there's a Go Bucs sign, somebody wants to put a Go Bucs sign on the bus, would that be considered political? Absolutely not. Absolutely not? Absolutely not. And here's why. I can't think of anything more politicized as defined as an issue on which people disagree There's a lot of disagreement in the states on football. That isn't what he said. What he said was it was an issue upon which society is fractured and in which factions of the society take opposite views. And I think that that's a much broader thing than, by the way, Go Blue, the Wolverines versus the Bucs. I mean, that's a football game. Political I would think of as government, but the definition, society disagrees, that strikes me. You can't get our society to agree on anything in these states. I would say in the current state of things, you're right. There's a lot more disagreement than there should be on things going on. What do you do with the, why wouldn't the contraceptive ad violate that definition? Well, because the contraceptive ad wasn't promoting contraceptives, wasn't against contraceptives. It was informing people from a commercial standpoint of family planning things that the state of Michigan provides to low-income people. Do you think people would be okay with needing an abortion? Go to Planned Parenthood. Would that be a... No, that would not be okay. I think that that would be much in line with... No, I think abortion is definitely one of the larger fractured issues in society. I agree with that there's more, but then is it like, do we do a poll and do we say, is it fractured 50-50 versus contraceptive? Maybe that's 80-20 and it's only the 50-50 issues that are fractured that are... No, I don't think so, but I think if the ad from the Michigan Department of Community Health had been different, it could have been political. But as it was, it says, if you're low-income, you can come for family planning services and it has birth control available as part of that. So how is that different than the abortion hypothetical where it's just Planned Parenthood isn't necessarily advocating for abortion, they're just letting consumers of abortion potentially know that they're available? Well, Planned Parenthood in society does advocate for abortions, as you well know. Typically as part of our review process, we review the content of the ad, we review the organization and their website. And if you go to Planned Parenthood's website, and I haven't done this, quite frankly I'm probably guessing, they are strong advocates of abortion rights. And that is a very politicized issue. Whether people should be able to have abortions versus whether people shouldn't be able to have abortions is a politicized issue, there's no doubt about that. Did you keep them off the bus? I'm sorry? Planned Parenthood. Can you keep that name off the bus or just... I was just going to say, you just suggested that by definition they're an advocacy organization, so what about the NRA, the National Rifle Association, and it just said the National Rifle Association, and that was it. No advocacy for guns, but would that be okay? Well, I think it's the content of the message in the ad that's appropriate. We also review the website, but I don't think the website itself is enough. And I think the example of that is Plaintiff's third ad in this case. They tell you that they submitted two ads to us, but they submitted a third ad to us as well, one that said, don't believe in Muhammad, you're not alone. Without the truthaboutmuhammad.com website reference, and we accepted it, and we said, yes, we'll put that on our bus, we're more than willing to do so. That's a religious outreach message, just like the atheist ad, the Detroit COR ad. I mean, you have objective stats that have caused at least some amount of controversy. Why wouldn't that fit? We didn't have those stats before posting it. I agree, but you... But we still consider that an outreach, much like the Union Church ad that was presented to this court. It's an organization that says, you're not alone, come join us. I don't think that that's a political issue. They're not saying, don't believe in God. As this court noted, they're not saying, do you have a problem with the Pledge of Allegiance? They're saying, you're not alone, come join us. That's not a political issue. But putting the website indication makes it a political issue. Putting in the website indication, the truthaboutmuhammad.com, and then you go to that website, and on the very first page it says, pedophile and misogynist, et cetera, et cetera, and then goes through all of their political objectives, absolutely, that makes it a political issue. But once they took that off, we said, fine, you can post it, and then they didn't follow through. Now putting the president's picture on the bus there and say, I love everybody from Michigan, or I love everybody in Ohio, would that be okay? The president's? Yeah, the President Trump, he's kind of controversial. He is kind of controversial, but again, the test isn't controversial, the test is political. Well, but you define, at least the 30 v. 6 witnesses, defined any advocacy of a position of any politicized issue, and then that 30 v. 6 witness was asked, what does politicized mean? Correct. Politicized was defined as, if society is fractured on an issue, and factions of society have taken up positions on it that are not in agreement, it's politicized. And so I see it completely divorced from politics, almost. That's why I thought, I can think of areas where society disagrees, and it has nothing to do with politics. The Ohio State-Michigan football game was the example that was obvious in this state. So do you want to revise that definition to say, are not in agreement about proper government, or is there some type of component of... Well, yeah, I mean, clearly the way we've applied it, it deals in that manner. I can't say that Mr. Chubb, in the heat of the moment, completely described how this is. I agree. But yes, these are issues of or relating to government, of or relating to problems that different sides perceive with each other relative to political issues. What if it's doing both? So the Nike ran a very controversial ad campaign with Colin Kaepernick. Do you know what I'm talking about? I do. You know, if Nike wanted to run the picture of Colin Kaepernick, I think it said, believe in something or to lose everything. I forget exactly the phrase, but there was kind of the message that Colin Kaepernick was trying to send. Do you think that that would be allowed, or do you think that that Nike ad would be... I would have to see the ad, to be honest with you. But if what you're describing is just a picture of Colin Kaepernick that says something along the lines of, stand up for what you believe, no matter what you believe in, which I think is close enough to the Nike ad, I would not see that personally as a political issue. Do you think that it would be taken by an objective observer to be espousing the views of Colin Kaepernick? So the counter would be, what about a Blue Lives Matter ad, would that be allowed? The Blue Lives Matter ad, probably not. Is that kind of a... I don't think it's the same thing. And, you know, the objective observer looking at this ad and being upset with it is not really what we try to determine. What we try to determine is if this ad on the bus is indicating a favoritism on the part of SMART, or is a captive audience problem. SMART is a governmental entity that represents an entire metropolitan area, essentially. And so what we're trying to do is not take a position on these things. We don't want to say Muslims are imposing Sharia law in America. We don't want to say Muslims are not imposing Sharia law in America. We don't want ads that say the impeachment proceedings against Trump are appropriate. We don't want ads that say the impeachment proceedings against Trump are appropriate. We don't want ads that say he's an idiot for imposing tariffs on such a big country that's going to kick our butt. Yeah, I completely feel for you and I understand all of that. The problem is we just have these recent Supreme Court opinions that seem to suggest... Well, again, I think Mansky, Mansky doesn't say that political is undefinable. Mansky says that using the word political and applying it in the way Minnesota did is the problem here. Minnesota changes that definition based upon what this candidate says and what that candidate says. And this election judge over here has to keep a mental tally of that so that he knows whether he can exclude somebody or not exclude somebody. And the problem with that is that the people who are trying to go to vote can't really ever know what's allowed and what's not allowed. That's not the problem here. We have a definition that's being applied consistently by the government that's actually imposed it. Isn't the problem though that you need to have a guideline in place that makes the answer to all of the hypotheticals we've been giving obvious? And I guess based on the 30B6 deposition, it wasn't obvious to me when I came in here what your answers were going to be to a lot of our hypotheticals. So potentially you could draft a guideline that would have clear guidance. But the takeaway from Mansky, at least the way I read the opinion, is that you need it to be objective in the sense when we apply the hypotheticals that they applied in Mansky, you knew what the answers would be. And here it's just, I mean, it's not clear to me what the answers should be to a lot of these hypotheticals we've given you. Well, this court has already previously determined that this is something that a reasonable person can look at and determine. These are guidelines that are essentially internal to SMART. They are applied by SMART for ads. When we are told, when somebody is told your ad has been banned or barred, they get an explanation, this is a political issue, this is something that SMART can't take a position on, this is something that is, well, it's imposing upon a captive audience and we don't post these types of ads. In this case, that's exactly what occurred. Now, is that problematic? Is it perfect? It can't ever really be perfect. I'm afraid. Anytime you put something in the hands of a person, it's never going to be perfect. But I can tell you this, the definition that Mr. Chubb gave applies to every one of the ads that's before this court and explains the decision on every one of the ads before this court and they were correct decisions. Now, if you're going to go as far as the Wolverines versus the Buckeyes or you're going to go as far as, I like Carnations versus Roses, then you're taking this to illogical extremes. You really are. And the fact of the matter is then you can modify this as we do in our application to be about governmental issues. Fair enough. Any other questions? So can we, in terms of Mr. Chubb's deposition, let's say we, you know, there's a concern that it's maybe not as focused as it should be or not as complete. It doesn't make reference to government or running a government. Should we look beyond his deposition? I know that Ms. Dryden was deposed. I don't recall if Beth Gibbons were. I mean, should we kind of look at the totality of what's needed? I think we do need. Because the Chubb statement or explanation from his deposition is maybe a little bit problematic. Well, problematic. I wouldn't necessarily say it's problematic. Certainly, it's not So well, I would agree that it doesn't go on to say of or relating to government. But the word politics itself is of or relating to government, as this Court has recognized, as the Mansky Court itself indicated. That's part of what politics is. And when you're talking about, from Mr. Mews's questioning standpoint, his question of what's politicized, then you're assuming already that it's of or relating to government when you say it's a fractured issue upon which factions That's really implicit in his answer, is what you're saying. That would be my, I think it's implicit in the word politics to begin with. Okay, thank you. Thank you very much. Thank you. As this Court's questions to opposing counsel make clear, the standard is utterly unworkable. This is Mansky in spades. You know, one of the problems we had, Your Honor, when we had the preliminary injunction that was granted, their 30B6 witness that they designated who testified before Judge Hood was asked specifically about the ad, is there anything about my client's ad that the content was political? And she said no. She said how they defined political is because it created a controversy down in Florida. And that was the smoking gun. But this Court said, well, that was just Beth Gibbons' opinion, so they disregarded it. Well, Beth Gibbons is a decision maker. So now when they had their 30B6, they don't have any other written guidelines on what the standard is. This is it. We asked them specifically, what is this guideline? How does SMART apply political? Just like in Mansky, and you got the Chubb definition's description. A lawyer who they designated as their Rule 30B6 witness. That's the standard. It's unlawful on its face. A couple real quick. You look at that contraception ad. What does it say? Have a baby when the time is right for you. Put yourself plan first. That's advocating for contraception. It's not this innocuous, oh, we just have free contraception that he wants it to be. When you look at my client's ad, it's rather innocuous. Leaving Islam, foul on your head, got questions, get answers. On the Mohammed ad, they'll run the ad without the website, but they won't run it with the website. And you look at the, what is the Detroit Coalition website that was on the ad that they did accept? Our mission. Quote, from civil rights and separation of state and church activism. How is that not politics? I mean, it's so haphazard how they're applying it. And the problem with, and Mansky makes this point, United Food and this court made the point, when you have this lack of objective standards where it's haphazard, you're now allowing policy makers, government officials based on their own personal predilections to decide what speech is acceptable and which is not, and that you cannot do under the First Amendment. Thank you. Okay. Thank you, both of you, for your arguments today. We very much appreciate them. I won't make any further comments about Ohio versus Michigan. Go Irish. I'll add a third one to that. Go Irish.